1  **CARLSON LYNCH LLP**
   Todd D. Carpenter (CA 234464)
2  tcarpenter@carlsonlynch.com
   Scott G. Braden (CA 305051)
3  sbraden@carlsonlynch.com
   1350 Columbia Street, Ste. 603
4  San Diego, California 92101
   Telephone:  619.762.1910
5  Facsimile:   619.756.6991

6  *Attorneys for Plaintiff and*
   *Proposed Class Counsel*

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10 CALLY FALLENSTEIN, on behalf of      Case No.  **'21 CV 1690 AJB AGS**
   herself and all others similarly situated,

11                                       **CLASS ACTION COMPLAINT**
                Plaintiff,
12                                       **1. Violation of California's Unfair
         vs.                                Competition Laws ("UCL");**
13                                          CAL. BUS. & PROF. CODE §§ 17200, *et seq.*
   PVH CORP., a Delaware Corporation,
14 PVH RETAIL STORES LLC, a              **2. Violation of California's False Advertising
   Delaware Limited Liability Company,      Laws ("FAL");**
15 and DOES 1- 50, inclusive,              CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

16              Defendants.              3. **Violations of California Consumer Legal
                                            Remedies Act ("CLRA");**
17                                          CAL. CIV. CODE §§ 1750, *et seq.*

                                         **[DEMAND FOR JURY TRIAL]**
18

19

20

21

22

23

24

25

26

27

28

Plaintiff Cally Fallenstein ("Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Defendants PVH Corp. and PVH Retail Stores LLC ("PVH Retail" and, collectively with PHV Corp., "Defendants"), and states:

## I.     NATURE OF THE ACTION

1.     American consumers thrive on finding the best deal. Retailers, including Defendants, are keen to this fact and try to lure consumers to purchase their goods with advertised sales that promise huge savings off the regular price. But the promised savings are false if a retailer simply recasts its regular price as a discount from some higher, fictitious "original" price that no one ever pays. This class action seeks monetary damages, restitution, declaratory and injunctive relief from Defendants arising from their deceptive business practice of advertising fictitious reference prices and corresponding phantom discounts on Calvin Klein branded outlet merchandise sold in Defendants' Calvin Klein outlet stores in California.

2.     The practice of false reference pricing occurs when a retailer fabricates a false "original" price, and then offers an item for sale at a deeply "discounted" price.  The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase. In reality, the practice artificially inflates the true market price for these items by raising consumers' internal reference price, and therefore the value, ascribed to these products by consumers.  The practice enables retailers, like Defendants, to sell their goods above their true market price. Consumers are damaged by the inflated market price that is established by the false-discounting scheme.

3.     An overview of the illegal scheme and attendant harm are best demonstrated by the following example: Take a retailer who is in the business of selling suits. That retailer knows it can sell a particular suit at $250.00. That $250.00 price represents the "market" price for the suit and the price at which the retailer regularly offers the suit for sale and makes a profit.  The retailer then offers the suit on sale.  However, instead of discounting the suit from its true original price of $250.00, the retailer utilizes an inflated, "original" price for the suit and lists it at $1,000.00, and then holds it out for sale at **70% off**—rendering

the "*sale*" price of the suit $300.00. Consumers who happen upon that purported fake "sale" are influenced by the amount of the perceived, substantial discount.  By presenting the consumer with a false "original" price of $1,000.00, the retailer has increased demand for the suit through the ***perceived value*** of both the suit itself and the substantial discount of $700.00.  This effect, in turn, impacts the market price of the suit because more consumers are willing to pay $300.00 for a suit they believed was once sold for $1,000.00, when, in fact, the true market price of the suit, without the false discount, was $250.00.  If the retailer tried to sell that same suit, for $300.00, ***without*** offering the false original price of $1,000.00 and the attendant 70% off discount, that retailer would not be able to sell any suits at $300.00 because the true market price of the suit is $250.00.  Thus, through the use of a false original price and the corresponding phantom discount of 70% off, the retailer was able create a false "market" price for the suit—at $300.00.  Plaintiff's case seeks that disparity—the impact on the increase in market price from $250.00 to $300.00 through the Defendants' application of an illegal discounting scheme.

4.    Retailers, including Defendants, substantially benefit from employing false reference pricing schemes and experience increased sales because consumers use advertised reference prices to make purchase decisions.  The information available to consumers varies for different types of products, but consumers frequently lack full information about a product and, as a result, can incorporate information from sellers to make purchase decisions.

5.    Through their false and misleading marketing, advertising, and pricing scheme alleged herein, Defendants violated, and continue to violate, California and federal law which prohibit the advertisement of goods for sale discounted from former prices that are false.  California and federal law also prohibit the dissemination of misleading statements about the existence and amount of price reductions. Specifically, Defendants violated, and continue to violate: California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, CAL.

CIV. CODE §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

6.  Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more Calvin Klein branded outlet products from a Calvin Klein outlet store in California that was deceptively represented as discounted from a false reference price. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff also seeks to enjoin Defendants from using false and misleading misrepresentations regarding former price comparisons in their labeling and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of their sales of merchandise offered at a false discount.

7.  Finally, Plaintiff seeks reasonable attorneys' fees pursuant to CAL. CIV. PROC. CODE § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

## II.    JURISDICTION AND VENUE

8.  This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class (defined below) have a different citizenship from Defendants.

9.  The Southern District of California has personal jurisdiction over Defendants because Defendants are corporations or other business entities which conduct business in the State of California. Defendants conduct sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves to the California market through the operation of the Calvin Klein outlet stores within the State of California.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants transact substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims arose here.

### III.     GENERAL ALLEGATIONS

**A.    Retailers Benefit from False Reference Pricing Schemes.**

11.     Defendants engage in a false and misleading reference price scheme in the marketing and selling of their products in their Calvin Klein outlet stores.

12.     Retailers substantially benefit from employing false reference pricing schemes and experience increased sales because consumers use advertised reference prices to make purchase decisions.  The information available to consumers varies for different types of products,[1] but consumers frequently lack full information about a product and, as a result, can incorporate information from sellers to make purchase decisions.[2]

13.     Defendants' deceptive advertised reference prices are thus incorporated into the consumer's decision process. First, a product's "price is also used as an indicator of product quality."[3]   In other words, consumers view Defendants' deceptive advertised reference prices as a proxy for product quality. Second, reference prices "appeal[] to

---

[1] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (*e.g.*, style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (*e.g.*, longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (*e.g.*, whether the shirt's cotton was produced using organic farming methods). Darby, Michael R., and Edi Karni. "Free Competition and the Optimal Amount of Fraud." *The Journal of Law and Economics* 16 no. 1 (1973): 67-88, pp. 68-69.

[2] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Nelson, Phillip. "Information and Consumer Behavior." *Journal of Political Economy* 78, no. 2 (1970): 311-329, pp. 311-312.

[3] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 54. Also see Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 212 ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

consumers' desire for bargains or deals."[4] Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[5] Under this concept, coined as "transaction utility" by Noble Prize-winning economist Richard Thaler, consumers place some value on the psychological experience of obtaining a product at a perceived bargain.[6]

14.    Research in marketing and economics has long recognized that consumer demand can be influenced by "internal" and "external" reference prices.[7] Internal reference prices are "prices stored in memory" (*e.g.*, a consumer's price expectations adapted from past experience) while external reference prices are "provided by observed stimuli in the purchase environment" (*e.g.*, a "suggested retail price," or other comparative sale price).[8] Researchers report that consumer's internal reference prices adjust toward external reference prices when valuing a product.[9] For infrequently purchased products, external reference prices can be particularly influential because these consumers have little or no

---

[4] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 52.

[5] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." *Journal of Consumer Psychology* 13, no 3 (2003): 328-338, p. 328.

[6] "To incorporate … the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal'". Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 205.

[7] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 68.

[8] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 62.

[9] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." *The Journal of Marketing* 62 (1998): 46-59, p. 48.

prior internal reference.[10]  In other words, "[t]he deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or knowledge of the product and product category."[11]  Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[12] and publications have summarized the empirical data as follows:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][13]

15.    Retailers, including Defendants, understand that consumers are susceptible to a good bargain, and therefore, Defendants have a substantial financial interest in making the consumer believe they are receiving a good bargain, even if they are not. A product's reference price matters to consumers because it serves as a baseline upon which consumers perceive a product's value.

**B.    California State and Federal Pricing Regulations Prohibit False "Original price" references and Out-Dated "Original price" references.**

16.    Under California law, a retailer may only discount an item from its own *original price* for up to 90 days, or in the alternative, it may offer a discount from the original price of an item being offered by a competitor, within the relevant market, for up to 90 days.  In either scenario, a retailer can only offer a "sale" from an original price for 90 days.  At that point, on day 91, the retailer has two options: the product must either return

---

[10] As Thalen notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Thaler, Richard. "Mental Accounting and Consumer Choice." Marketing Science 4, no. 3 (1985): 199-214, p. 212.

[11] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[12] Kalyanaram, Gurumurthy, and Russell S. Winer. "Empirical Generalizations from Reference Price Research." *Marketing Science* 14, no. 3 (1995): G161-G169, p. G161.

[13] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

to its full original price, or the retailer may continue to sell the product at the discounted price, *__as long as it discloses to the consumer the date on which the product was last offered for sale at its full retail price__*. *See* Bus. & Prof. Code § 17501.  Under California law, a retailer cannot use an old, outdated, "original price" as the basis for a sale or discount, unless it discloses to the consumer the date on which the prior original price was offered in the market.

17.   Additionally, under the FCTA, when a retailer offers a discount from *__its own__*, former ***original price***, the original price is required to have been a price at which *__the retailer__* held that item out for sale *__on a regular basis,__* for a *__commercially reasonable period of time__*.  *See* 16 C.F.R. § 233.1(a) and (b) (emphasis added).

**C.   Defendants' Fraudulent Price Discounting Scheme Violates California State and Federal Regulations.**

18.   Defendants advertise merchandise for sale by listing on the merchandise's price tag a fictitious or misleading **Manufacturer's Suggested Retail Price ("MSRP")** appearing alongside a corresponding sale sign such as "_% off" or "$29.99" to arrive at its "sale price." This seeming discount from Defendants' "**MSRP**" reference price conveys to consumers, including to Plaintiff, "the product's worth and the prestige that ownership of the product conveys." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) (*citing* Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."). "Misinformation about a product's 'normal' price is…significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

19.   The reason why the "**MSRP**" reference price is either false or misleading is because Defendants either: 1) have never offered the outlet goods for sale at the "**MSRP**" (in the case of its "made for outlet" merchandise), or 2) have offered the outlet merchandise for sale at their "**MSRP**" at some time period in the distant past—in violation of the 90-day

time period afforded them to discount merchandise under California law[14] and the federal regulation requiring the discount to be presented from a recent, regularly offered, original price.

20.    Additionally, Defendants are not offering a discount or a percentage off (% off) a competitor's price for goods offered for sale in the relevant market. In the case of its "made for outlet" products, there are no other retailers who sell those goods; they are exclusively sold by Defendants' Calvin Klein outlets.  In the case of their out of season merchandise, the Calvin Klein merchandise being offered at Defendants' outlet stores is not offered at any other relevant market competitors in the 90-day time period preceding the sale because it is old and outdated.

21.    How the scheme works: on all merchandise sold in the Calvin Klein outlet stores, Defendants represent to consumers a "**MSRP**" on the product's price tag (i.e., $49.00).  Defendants then publish the proffered discount as a percentage off (i.e*.,* 40% off) or at a sale price (i.e., $29.99). The represented discounts are advertised on placards placed at, on, or above the particular products being discounted.

22.    The "**MSRP**" reference price thus represents to consumers the merchandise's "original price, while the "sale" price denotes to consumers a significantly discounted price, or savings from the regular higher price.

23.    Defendants' Calvin Klein outlets do not offer any outlet merchandise at the full, or original price—ever. Every product in the store is discounted from an original price, the minute it hits the floor.

24.    Defendants' perpetual discounting of the Calvin Klein outlet merchandise constitutes false, fraudulent, and deceptive advertising because the "**MSRP**" reference price listed is substantially higher than those prices ever actually offered by Defendants in their outlet stores. The reference price is used exclusively as a benchmark from which the false discount and corresponding "sale" price is derived. Defendants' scheme has the effect of

---

[14] If Defendants continued to offer a discount from an original price, beyond the 90-day time period afforded it under California law, they were required to disclose the date on which the original prices were last offered.  Defendants do not make any such disclosure.

CLASS ACTION COMPLAINT

tricking consumers into believing they are getting a significant deal by purchasing merchandise at a steep discount, when, in reality, consumers are paying for merchandise at its usual retail price. Defendants' deceptive pricing scheme further artificially raises the prices actually paid by consumers by creating the false impression of a bargain.

25.     Defendants' Calvin Klein outlet merchandise is *never* offered for sale, nor actually sold, at its advertised "**MSRP**" reference price. Similarly, regular Calvin Klein merchandise, that may have been previously offered for sale at other retailers or online, is never offered for sale at Calvin Klein outlet stores, at its advertised original price, within 90 days of that price being offered in the market. Upon information and belief, "out of season" Calvin Klein merchandise is a small percentage of Defendants' outlet stores' total inventory and is typically several years removed from being marketed at the original price, if ever.

26.     Nowhere in Defendants' Calvin Klein outlet stores do Defendants disclose that the reference or original prices used are not: 1) former prices; or 2) are not recent (within 90 days), regularly offered former prices; or 3) prices at which identical products are sold elsewhere in the market. Nor do Defendants disclose the date at which the original prices were offered in the market or by one of Defendants' other retailers.  The omission of these disclosures, coupled with Defendants' use of fictitious advertised reference prices, renders Defendants' outlet pricing inherently misleading.

27.     Thus, the advertised reference prices are false and induce consumers into believing that the merchandise was once sold at the reference price, and will be again if the consumer does not make a purchase at the "bargain" price.  Defendants engage in this practice knowing full-well that the advertised products are never actually offered or sold at the advertised reference prices or never actually offered or sold at the advertised reference prices within 90 days of them being discounted in the Calvin Klein outlet store.

28.     Moreover, the advertised discounts were fictitious because the "**MSRP**" reference prices did not represent a *bona fide* price at which Defendants previously sold or offered to sell the products, on a regular basis, for a commercially reasonable period of time,

as required by the Federal Trade Commission ("FTC"). In addition, the represented advertised reference prices were not the prevailing market retail prices within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

29.    Thus, Defendants' scheme intends to, and does, provide misinformation to the customer. This misinformation communicates to consumers, including Plaintiff, that the products sold in Defendants' outlets have a greater value than the advertised discounted price.

**D.    Investigation**

30.    An investigation of Calvin Klein outlet stores conducted by Plaintiff's counsel (Plaintiff's Investigation") revealed that Defendants' outlet store merchandise is priced uniformly. That is, Calvin Klein outlet merchandise sold at Defendants' outlet stores bears a price tag with a false "**MSRP**" reference price, along with a substantially discounted sale price of "_% off" or, for example, "$29.99." Plaintiff's Investigation confirmed that the merchandise purchased by Plaintiff was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiff's purchase in violation of California law and the FTCA.

31.    Plaintiff's counsel's investigators cataloged the pricing practices of Calvin Klein outlet stores across California, including in Los Angles (Citadel Outlets), San Diego (Las Americas Premium Outlets), and Carlsbad (Carlsbad Premium Outlets), as well as Calvin Klein outlet stores in Chicago, Illinois, and Tinton Falls, New Jersey, and Grove City, Pennsylvania, from June of 2019 through October of 2019. Plaintiff's Investigation revealed that items listed for sale in Defendants' outlets were never offered for sale at their full "**MSRP**" reference price. Plaintiff's counsel's investigators visited Calvin Klein outlet stores consistently throughout the investigation period to verify the prices being offered on Defendants' outlet merchandise. The prices were uniform across all stores visited in California. All items, including the merchandise purchased by Plaintiff, in the Calvin Klein outlet stores were priced at a discount in the 90 days prior to Plaintiff's purchase, discussed

CLASS ACTION COMPLAINT

below. A sample of the products tracked, which remained continuously discounted throughout the observed period, include CK Leggings, Woven Top, Lightly Lined Bra, CK Graphic Tee, The Authentic Five-Pocket Pant, Slim Fit Top, and men's Straight Jeans. *See* Exhibit A, Investigation Summary.

32.    Additionally, Plaintiff's Investigation attempted to locate the items sold at the Calvin Klein outlet store in other distribution channels in the relevant market. For example, in San Diego, Plaintiff's Investigation verified that the merchandise sold at Calvin Klein outlet stores was *not* the same as Calvin Klein merchandise offered for sale at mainline Calvin Klein retail stores, Macy's, Bloomingdale's, Nordstrom, Nordstrom Rack, Kohl's, Ross Dress for Less, or TJ Max. Plaintiff's Investigation compared the items tracked in the Calvin Klein outlet stores to Calvin Klein merchandise offered for sale at the aforementioned retailers on a monthly basis during the course of the investigation.

33.    Thus, the "**MSRP**" on the Calvin Klein merchandise sold at Defendants; Calvin Klein outlet stores, including the "**MSRP**" listed on the products Plaintiff purchased, are either false original prices or severely outdated prices that have not been offered in the relevant market or at a Calvin Klein store for at least the three months (90 days) immediately preceding Plaintiff's purchase.

34.    The false reference price and corresponding discount price scheme were both uniform and identical on almost all of the merchandise sold at Defendants' outlet stores. The only thing that changed was the requisite "_% off" or sale price on certain merchandise items.

35.    The fraudulent pricing scheme applies to all Calvin Klein outlet merchandise offered on sale at Defendants' California outlet stores, including the products purchased by Plaintiff as described below.

IV.    **PARTIES**

**Plaintiff**

36.    Plaintiff resides in San Diego County, California.  Plaintiff, in reliance on Defendants' false and deceptive advertising, marketing and discounting pricing schemes,

purchased a small grey cardigan sweater, a medium green V-neck blouse, and a medium black tank top at a Calvin Klein outlet store located at the Las Americas Premium Outlets, 4265 Camino De La Plaza, San Diego, CA 92173 on October 1, 2019.  Plaintiff examined several women's apparel products at Defendants' San Diego outlet store before deciding on a grey cardigan, a green blouse, and a black tank top after reviewing the items' advertised sale prices. The grey cardigan purchased was advertised with a "**MSRP**" of $98.00 and a "sale" price of $49.00 (50% off). The green V-neck blouse Plaintiff purchased was advertised with a "**MSRP**" of $69.00 and a "sale" price of $34.75 (50% off). The black tank top Plaintiff purchased was advertised with a "**MSRP**" of $59.00 and a "sale" price of $29.50 (50% off). Plaintiff's receipt described the *actual* sale price of each item as the "New Price." During her time at the San Diego outlet store on October 1, 2019, Plaintiff noticed numerous signs within the store advertising a "__% off" over items throughout the store. Plaintiff noticed that most, if not all, items in the store were accompanied by an in-store sign purporting to represent a "__% off."

37.    After observing the "**MSRP**" of the items and the accompanying sale prices, Plaintiff believed she was receiving a significant discount on the items she had chosen. Because she liked the items and felt that the discounted price would likely not last, and that she was getting a significant bargain on the merchandise, she proceeded to the register and purchased the products. The "**MSRP**" and corresponding sale price of the items led Plaintiff to believe that she was purchasing authentic Calvin Klein merchandise that was previously available at Calvin Klein retail stores or other retail stores at the advertised reference prices, or sold formerly for that price at the outlet store. She paid a total of $122.03 with tax.

38.    However, the merchandise Plaintiff purchased was never offered for sale at the listed "**MSRP**" reference price on the price tag and certainly not within the three months (90 days) preceding Plaintiff's purchase.  Neither Plaintiff's receipt nor any in-store signage observed or relied upon by Plaintiff indicated to her that the products she purchased were not offered previously at the advertised reference price at Defendants' Calvin Klein outlet store or elsewhere.

39.    Neither Plaintiff's receipt, nor in-store signage, nor information listed on the price tags suggested that the products were exclusive. Plaintiff was damaged in her purchase because Defendants' false reference price discounting scheme inflated the true market value of the products she purchased. Despite being misled by Defendants with respect to the products she purchased, Plaintiff lacks personal knowledge as to Defendants' specific pricing practices relating to all its California outlet merchandise. Consequently, Plaintiff is susceptible to reoccurring harm because she cannot be certain that Defendants have corrected their deceptive pricing scheme, and she desires to continue to purchase Calvin Klein outlet merchandise from Calvin Klein California outlet stores, assuming that she could determine whether she was receiving authentic Calvin Klein products at a true bargain. However, she currently cannot trust that Defendants will label and/or advertise the merchandise truthfully and in a non-misleading fashion in compliance with applicable law. Plaintiff simply does not have the resources to ensure that Defendants are complying with California and federal law with respect to their pricing, labeling and advertising of their California outlet merchandise. An injunction is the only form of relief which will guarantee Plaintiff and other consumers the appropriate assurances.

40.    Additionally, because of the wide selection of merchandise available at Defendants' California outlet stores, the fact that there are numerous items of outlet merchandise involved in Defendants' deceit, and due to the likelihood that Defendants may yet develop and market additional outlet merchandise items for sale at their California outlet stores, Plaintiff may again, though by mistake, purchase a falsely discounted product from Defendants under the impression that the advertised reference price represents a *bona fide* former price at which the item was previously offered for sale by Defendants. Indeed, Plaintiff regularly shops at outlet stores, including Defendants', and she desires to continue purchasing merchandise from Calvin Klein outlet stores in the future. Moreover, Class members will continue to purchase the Calvin Klein California outlet merchandise, reasonably, but incorrectly, believing that its advertised reference prices represent *bona fide* former prices at which the merchandise was previously offered for sale by Defendants.

41.     Accordingly, Plaintiff, Class members and the general public lack an adequate remedy at law.  Absent an equitable injunction enjoining Defendants from continuing in the unlawful course of conduct alleged herein, Plaintiff, Class members and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendants' ongoing conduct, which cannot be remedied with monetary damages.

42.     Moreover, Plaintiff lacks an adequate remedy at law with respect to her claim for equitable restitution because she has not yet retained an expert to determine whether an award of damages can or will adequately remedy her monetary losses caused by Defendants.  Particularly, as legal damages focus on remedying the loss to the plaintiff, and equitable restitution focuses wholly distinctly on restoring monies wrongly acquired by the defendant, legal damages are inadequate to remedy Plaintiff's loss because Plaintiff does not know at this juncture, and is certainly not required to set forth evidence, whether a model for legal damages (as opposed to equitable restitution) will be viable or will adequately compensate Plaintiff's losses.

43.     Finally, Plaintiff's case is substantially predicated on Defendants' violations of CAL. BUS. & PROF. CODE § 17501, an equitable claim, as Plaintiff's Investigation revolved around ensuring that Defendants did not sell outlet merchandise within the 90 days preceding Plaintiff's purchase and, likewise, that Defendants failed to disclose to consumers the date on which outlet merchandise was last offered at their advertised reference price. This claim and test of liability go to the heart of Plaintiff's case and the same test is not available under a CLRA legal claim for damages.  Thus, Plaintiff does *not* have an adequate remedy at law because the CLRA does not provide the same metric of liability as CAL. BUS. & PROF. CODE § 17501, which is integral not only to Plaintiff's prayer for restitution, but also to Plaintiff's very theory of liability at trial. Accordingly, Plaintiff may set forth alternate claims for legal damages and equitable restitution.

**Defendants**

44.    Plaintiff is informed and believes, and upon such information and belief alleges, PVH Corp. is a Delaware corporation with its principal executive offices at 200 Madison Ave, New York, NY 10016. PHV Corp. operates Calvin Klein outlet stores, as well as the calvinklein.com website, and advertises, markets, distributes, and/or sells clothing and clothing accessories in California and throughout the United States.

45.    Plaintiff is informed and believes, and upon such information and belief alleges, PVH Retail is a Delaware limited liability company with is principal executive offices at 200 Madison Ave, New York, NY 10016. PHV Retail operates Calvin Klein outlet stores, as well as the calvinklein.com websites, and advertises, markets, distributes, and/or sells clothing and clothing accessories in California and throughout the United States.

46.    Plaintiff is informed and believes, and upon such information and belief alleges, that Calvin Klein was acquired in 2002 by Defendants for more than $400 million in cash.

47.    Plaintiff is informed and believes, and thereon alleges, that Defendants operate at least 18 Calvin Klein outlet locations in California.

48.    Plaintiff is informed and believes, and thereon alleges, that all times material hereto and mentioned herein, each defendant sued herein was the agent, servant, employer, joint venture, partner, subsidiary, parent, division, alias, and/or alter ego of each of the remaining defendants and was, at all times, acting within the purpose and scope of such agency, servitude, employment, ownership, subsidiary, alias, and/or alter ego and with the authority, consent, approval, control, influence, and ratification of each remaining defendant sued herein.

49.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein.  Plaintiff will amend her

Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

50.    The reference prices listed and advertised on products sold at Defendants' outlet stores are false or severely outdated reference prices, utilized only to perpetuate Defendants' false discount scheme.

51.    Defendants know that their reference price advertising is false, deceptive, misleading, and unlawful under California and federal law.

52.    Defendants fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and other members of the Class the truth about their advertised discount prices and former reference prices.

53.    At all relevant times, Defendants have been under a duty to Plaintiff and the Class to disclose the truth about their false discounts.

54.    Plaintiff reasonably relied upon Defendants' artificially inflated reference prices and false discounts when purchasing the products from Defendants' Calvin Klein outlet store in San Diego, California. Plaintiff would not have made such purchase but for Defendants' representations regarding the substantial discounts being offered on the merchandise. Plaintiff would like to continue shopping at Defendants' outlet stores in the future but cannot be certain of the veracity of Defendants' advertised bargains.

55.    Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendants advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiff, like other Class members, was lured in and damaged by the deceptive pricing scheme that Defendants carried out because of her reliance upon Defendants' misrepresentations.

## V.    CLASS ALLEGATIONS

56.    Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil

Procedure and seeks certification of the following Class against Defendants for violations of California state laws:

> All persons, within the State of California, who, within the preceding four years (the "Class Period"), purchased from a California Calvin Klein outlet store one or more products at a purported discount from an advertised "reference" price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Defendants, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with her motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

57. ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

58. ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

a. whether, during the Class Period, Defendants used falsely advertised reference prices on its outlet products labels and falsely advertised price discounts on merchandise sold in its outlet stores;

b. whether, during the Class Period, the reference prices advertised by Defendants were the prevailing market prices for the products in question during the three month period preceding the dissemination and/or publication of the advertised former prices;

c.      whether Defendants' alleged conduct constitutes violations of the laws asserted;

d.      whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

e.      whether Defendants engaged in false or misleading advertising;

f.      whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

g.      whether an injunction is necessary to prevent Defendants from continuing to use false, misleading or illegal price comparison.

59.      *Typicality*: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class members.

60.      *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

61.      *Superiority*: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged.  The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to retain the proceeds of their fraudulent and deceptive misdeeds.

62.    All Class members, including Plaintiff, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that former reference prices advertised prices were legitimate.  Due to the scope and extent of Defendants' consistent false sale prices and advertising scheme, disseminated in a years-long campaign to California consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class.  In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Defendants' false advertising scheme when purchasing merchandise sold at Defendants' Calvin Klein outlet stores.

63.    Plaintiff is informed that Defendants keep extensive computerized records of its Calvin Klein outlet customers through, *inter alia*, customer loyalty programs and general marketing programs. Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL")
### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

64.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

65.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. CAL. BUS. PROF. CODE § 17200.

66.    The UCL imposes strict liability.  Plaintiff need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

67.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

68.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendants' acts and practices offended an established public policy of transparency in pricing, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

69.    The harm to Plaintiff and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

*"Fraudulent" Prong*

70.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

71.    Defendants' acts and practices alleged above constitute fraudulent business acts or practices, as they deceived Plaintiff and are highly likely to deceive members of the consuming public. Plaintiff relied on Defendants' fraudulent and deceptive representations regarding their false reference prices and corresponding phantom discounts on products sold at Defendants' outlets. These misrepresentations played a substantial role in Plaintiff's decision to purchase those products at purportedly steep discounts, and Plaintiff would not have purchased those products without Defendants' misrepresentations.

*"Unlawful" Prong*

72.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

73.     Defendants' act and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, similar to the ones implemented by Defendants, are described as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – *for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

74.     In addition to federal law, California law also expressly prohibits false former pricing schemes. California's FAL, BUS. & PROF. CODE § 17501, entitled "*Worth or value; statements as to former price,*" states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

CAL. BUS. & PROF. CODE § 17501 (emphasis added).

75.    As detailed in Plaintiff's Third Cause of Action below, the CLRA, CAL. CIV. CODE § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

76.    The violation of any law constitutes an "unlawful" business practice under the UCL.

77.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

78.    Defendants' practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past, and will continue to mislead in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

79.    Defendants' violation of the UCL, through their unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "reference" prices and substantially discounted "sale" prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

80.    Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and an order for Defendants to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Defendants' revenues associated with their unfair competition, or such portion of those revenues as the Court may find equitable.

/ / /

/ / /

## SECOND CAUSE OF ACTION

### Violation of California's False Advertising Law ("FAL")
CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

81. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

82. CAL. BUS. & PROF. CODE § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

(Emphasis added).

83. The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

84. Similarly, this section provides

no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

CAL BUS. & PROF. CODE § 17501.

85. Defendants' routine of advertising discounted prices from false "reference" prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices (i.e., Defendants' actual sale price), was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were, therefore, leading to the false impression that the products sold at Defendants' outlet stores were worth more than they actually were.

86. Defendants misled consumers by making untrue and misleading statements and failing to disclose what is required by the Code, as alleged above.

87.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money.  As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all Class members, and to enjoin Defendants from continuing these unfair practices in violation of the UCL in the future.  Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**CAL. CIV. CODE § 1750, *et seq*.**

88.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

89.    This cause of action is brought pursuant to the CLRA, CAL. CIV. CODE § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by CAL. CIV. CODE § 1761(d). Defendants' sale of merchandise in their outlets to Plaintiff and the Class were "transactions" within the meaning of CAL. CIV. CODE § 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of CAL. CIV. CODE § 1761(a).

90.    Defendants violated, and continue to violate, the CLRA by engaging in the following practices proscribed by CAL. CIV. CODE § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise sold in their California outlet stores:

(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

91.    Pursuant to § 1782(a) of the CLRA, on or about September 28, 2021, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA, and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act.

92.    If Defendants fail to respond to Plaintiff's letter, fail to agree to rectify the problems associated with the actions detailed above, or fail to give notice to all affected consumers within 30 days of the date of written notice, as prescribed by section 1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendants.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests that this Court award relief against Defendants as follows:

a.    an order certifying the Class and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

b.    awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

c.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

d.    order Defendants to engage in a corrective advertising campaign;

e.    awarding attorneys' fees and costs; and

f.    for such other and further relief as the Court may deem necessary or appropriate.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: September 28, 2021

**CARLSON LYNCH LLP**

By: _/s/ Todd D. Carpenter_
Todd D. Carpenter (CA 234464)
tcarpenter@carlsonlynch.com

CLASS ACTION COMPLAINT

Scott G. Braden (CA 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone:   (619) 762-1910
Facsimile:    (619) 756-6991

*Attorneys for Plaintiff and
Proposed Class Counsel*

CLASS ACTION COMPLAINT